UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

STEPHEN M. DEANE,

    Plaintiff,

    v.   CAUSE NO. 3:21-CV-315-RLM-MGG

RON NEAL, et al.,

    Defendants.

## OPINION AND ORDER

Stephen M. Deane, a prisoner proceeding without a lawyer, moves for a preliminary injunction related to his medical care. The court ordered a response from Warden Ron Neal, which has now been received. (ECF 39.)

Warden Neal was originally ordered to respond to the preliminary injunction motion by July 26. He didn't do so, and the court issued an order requiring him to show cause why the response hadn't been filed. He timely responded to the show cause order on August 2, explaining that counsel inadvertently failed to calendar the original deadline because it was set before the Warden entered an appearance in the case. Along with his response to the show cause order, the Warden filed a response to the preliminary injunction motion totaling 250 pages with attachments. Warden Neal has since remedied his omission, and his failure to comply with the original order caused only a very short delay in briefing on the motion. Given the unusual procedural history of the case, the court finds no basis to hold him in contempt. The order to show cause is discharged.

Mr. Deane claims that he suffers from chronic constipation and hemorrhoids. He was granted leave to proceed on damages claims against two medical providers—Dr. Nancy Marthakis and Nurse Practitioner Diane Thews—for deliberate indifference to these conditions from January 2021 to the present. Mr, Deane is also proceeding on a claim against Warden Neal in his official capacity for injunctive relief related to his ongoing need for treatment for these conditions. Mr. Deane's motion for a preliminary injunction asks that the court order that he be immediately taken to a "suitable" outside physician and that prison medical staff be required to "car[ry] out the doctor's orders." (ECF 12-1 at 2.)

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (emphasis in original). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). On the first prong, "the applicant need not show that [he] definitely will win the case." Illinois Republican Party v. Pritzker, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). As to the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent

with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, 555 U.S. at 22.

"Mandatory preliminary injunctions – those requiring an affirmative act by the defendant – are ordinarily cautiously viewed and sparingly issued[.]" Mays v. Dart, 974 F.3d 810, 818 (7th Cir. 2020) (quotation marks omitted). The court's ability to grant injunctive relief in the prison context is significantly circumscribed; any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." Westefer v. Neal, 682 F.3d 679, 681 (7th Cir. 2012) (citations and internal quotation marks omitted). The court must also bear in mind that "[p]rison officials have broad administrative and discretionary authority over the institutions they manage." Id. at 683 (citation omitted).

Under the Eighth Amendment, inmates are entitled to adequate medical care, although "[n]ot every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim." Thomas v. Blackard, 2 F.4th 716, 722 (7th Cir. 2021) (citation omitted). Inmates are "not entitled to demand specific care," Walker v. Wexford Health Sources, Inc., 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." Id. at 267. Mere disagreement with a medical professional about the appropriate course of treatment doesn't establish an Eighth

3

Amendment violation. Ciarpaglini v. Saini, 352 F.3d 328, 331 (7th Cir. 2003). The court must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." Walker v. Wexford Health, 940 F.3d at 965 (citation and quotation marks omitted). "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to establish an Eighth Amendment violation. Hildreth v. Butler, 960 F.3d 420, 425–426 (7th Cir. 2020). To prevail, the inmate must show deliberate indifference, "a culpability standard akin to criminal recklessness." Thomas v. Blackard, 2 F.4th at 722.

Warden Neal submitted medical records showing that Mr. Deane is 69-years old and has several chronic health conditions, including hypertension, high cholesterol, and gout. (ECF 39-1 at 72.) He has been prescribed several medications to manage his conditions. (*Id.* at 22.) Providers have noted that he has additional risk factors due to obesity, a "poor diet," and an "inactive lifestyle." (*Id.* at 72, 191.) It has been noted that he has not been compliant with dietary restrictions needed to manage his conditions, and he has been counseled on increasing his activity level, losing weight, and eating a low sodium, low fat diet. (*Id.* at 74.) Records reflect that medical providers at Indiana State Prison see him for regular chronic care visits, and he has also been seen more than 20 times since January 2020 in response to his health care requests. On some occasions, he has been a "no show" for scheduled appointments. (*Id.* at 54, 89, 96, 103.)

4

Medical records also reflect that Mr. Deane has a history of abusing controlled substances while in the prison. Records reflect that three times during 2020—once in April 2020, once in July 2020, and another time in September 2020—he was found in his cell unresponsive or otherwise exhibiting signs of being under the influence of a controlled substance.[1] (*Id.* at 100-02, 134-36, 157-59.)

Medical records relating to Mr. Deane's constipation and hemorrhoids reflect that he has been seen approximately ten times for these problems since January 2021. (*Id.* at 182, 187, 191, 202, 209, 214, 219, 227.) He has been prescribed fiber medications and has been counseled on things he can do to improve his condition, including exercising, eating high-fiber foods, and increasing his fluid intake. (*Id.* at 183-236.) Medical staff have physically examined him, but have found his abdomen soft, not distended, and his bowel sounds normal. (*Id.* at 185, 187, 203, 215, 200.) Dr. Marthakis has ordered an x-ray of his abdomen.[2] (*Id.* at 218.) His hemorrhoids appear to be a sporadic problem; some exams revealed the presence of hemorrhoids, and others did not, but he has been given several doses of suppositories to address the issue. (*Id.* at 186, 203, 210.)

---

[1] Mr. Deane was offered addiction recovery services in February 2020 but refused them. (ECF 39-1 at 69.) Mr. Deane has denied using drugs, but during one of the incidents, a correctional officer found drug paraphernalia in his cell, and medical staff noted that he was anxious, had an unsteady gate, and his pupils were dilated. (*Id.* at 101.) During another incident, he was discovered smoking an unknown substance in another inmate's cell, and medical staff noted that he was disoriented and mumbling to himself. (*Id.* at 136.)

[2] It is unclear if the x-ray has been completed. It appears that the appointments were rescheduled several times when correction staff didn't bring Mr. Deane to the medical unit. (ECF 39-1 at 223, 225.) There is no indication medical staff caused or were involved in the delay.

5

Medical records also reflect that since filing this lawsuit in early May 2021, Mr. Deane has become argumentative and uncooperative with medical staff. He refused to undergo a drug screening that Dr. Marthakis ordered in May, stating that "it is a conflict of interest to give Wexford Medical Staff a specimen of anything, subject to altering or tampering due to ongoing litigation." (ECF 39-1 at 21.) Mr. Deane threatened litigation during two May visits if he wasn't given a particular medication. (*Id.* at 228, 232.) In late May, a provider was trying to get information from Mr. Deane to determine whether a fiber medication was working, when Mr. Deane became argumentative and abruptly left in the middle of the visit, leaving the provider unable to conduct a physical examination or complete her assessment. (*Id.* at 233.)

In summary, medical staff have seen Mr. Deane many times in response to his medical complaints and given him medication to address his symptoms. They have been unable to confirm his subjective complaints through physical examination of his abdomen, but additional diagnostic testing has been ordered. Mr. Deane clearly disagrees with Dr. Marthakis's decision to conduct a drug screening before giving him any more medications for constipation, but the question for the court is only whether, under the circumstances, no minimally competent medical provider would have responded as she did. Walker v. Wexford Health, 940 F.3d at 965. ^In light of Mr. Deane's history of drug abuse while in prison, the court can't conclude that her actions

meet this standard.[3] Nor is there any evidence in the record to support Mr. Deane's suspicion that medical staff are likely to tamper with a specimen he provides.

Medical records reflect that Mr. Deane has become uncooperative and argumentative with medical staff in recent months. If he doesn't cooperate with medical staff, they can't adequately treat him. The Eighth Amendment doesn't entitle any inmate to the treatment of his choosing, nor can he be permitted to "engineer" a constitutional violation. Rodriguez v. Briley, 403 F.3d 952, 953 (7th Cir. 2005).

Based on the documents before the court, Mr. Deane hasn't demonstrated that he is likely to succeed on his claim that medical providers have been deliberately indifferent to his medical problems. Nor has he demonstrated that he will suffer irreparable injury if he is not granted immediate relief in the form of an order requiring the Warden to immediately take him to an outside physician.

For these reasons, the order to show cause is DISCHARGED. The motion for a preliminary injunction (ECF 12) is DENIED.

SO ORDERED on August 18, 2021

                                                                s/ Robert L. Miller, Jr.  
                                                                JUDGE  
                                                                UNITED STATES DISTRICT COURT

---

[3] Opiate drugs can cause constipation. See, e.g., Balsewicz v. Maasen, No. 12-CV-153-BBC, 2013 WL 4508885, at *5 (W.D. Wis. Aug. 26, 2013); Grieves v. Astrue, No. 07 C 4404, 2008 WL 2755069, at *6 n.8 (N.D. Ill. July 11, 2008). Additionally, controlled substances taken recreationally could interact with prescription medications. See Tabor's Medical Dictionary, "Drug Interactions," available at https://www.tabers.com/tabersonline/view/Tabers-Dictionary/732594/all/interaction#0 (last visited Aug. 16, 2021) ("The combined effect of drugs . . . may be antagonism or synergism and may be lethal in some cases. It is important for the patient, pharmacist, physician, and nurse to be aware of the potential interaction of drugs that are prescribed as well as those that the patient may be self-administering.").